**UNITED STATES of America**

v.

**Frank SANTANGELO, Defendant.**

**No. 75 Cr. 735.**

United States District Court,
S. D. New York.

Dec. 8, 1975.

Thomas J. Cahill, U. S. Atty., S. D. N. Y., by Audrey Strauss, Asst. U. S. Atty., New York City, for plaintiff.

Jerome V. Giovinazzo, Staten Island, N. Y., for defendant.

ROBERT L. CARTER, District Judge.

## OPINION

On November 7, 1975, over the government's objection, a hearing was held on defendant's motion to suppress evidence seized by police officers on February 19, 1975, from a car he was driving. On November 14, 1975, a memorandum opinion was filed validating the search and seizure and denying the motion to suppress. The matter proceeded to trial on November 18–19. The seized materials—which were a variety of checks—were introduced into evidence. The jury found the defendant guilty on all counts.

Prior to the start of the second day of trial, counsel for the government advised the court and the defendant that one of the passengers in the car defendant had been driving at the time the police officers searched it and seized evidence therefrom had been found and was available to testify. The trial of defendant proceeded, summations were made and the jury charged. While the jury was deliberating, the hearing on the motion to suppress was reopened.

■ At the reopened hearing a new witness, Michael Oben (one of the passengers in defendant's car), testified and Frank Senerchia, the police officer who searched the car, testified again. Their testimony as to the events occurring up to the time Police Officer Joseph Esposito returned to the patrol car to check on defendant's driver's license did not vary substantially from what we learned at the original hearing. The defendant, together with two passengers whom he had just picked up—one seated beside the driver and one in the back—was stopped at Allen and Houston Streets at about 11 p. m. on February 19, 1975. The police officers approached from each side of the car; Esposito asked for the defendant's license and registration. The defendant, however, was only able to provide a part of a license—a conviction stub. Esposito then went to the radio car to check on the validity of defendant's license. From this point on, the testimony reveals major discrepancies from what we were told at the November 7th hearing.

Oben testified that Senerchia looked into the glove compartment, saw a small broken knife and told all occupants to get out of the car. He then made a search of the car, pulled an envelope out from under the floor mat, took some records out of the envelope and threw them and the envelope on the seat; later, he went back to the car, picked up the envelope a second time, took it over to his partner, and then took defendant and his passengers to the precinct. Since what happened at the police station is of no relevance to the issue being re-examined, those events need not be retraced.

Senerchia, at the reopened hearing, testified that he saw about two inches of the envelope sticking up from under the edge of the floor mat near the console and that he did not know what was in it. Indeed, he could not tell whether anything was in it at all. His testimony reveals that he pulled the envelope out looking for and hoping to find some better identification of the driver. When he took out the envelope, he discovered the checks. He then ordered everyone out of the car, and while everyone was out, he looked in the car again, discovering the knife. He examined the knife and threw it back into the glove compartment. No personal search was made of any of the parties at this time. The defendant was searched at the police station subse-

quent to his arrest. Officer Senerchia claimed that he had not mentioned the knife at the first hearing because he did not feel it important and he had forgotten it.

Based on the first hearing, I sustained the search and seizure on the grounds that Senerchia had picked up what had been described as a bulging package fully exposed between the driver's seat and the console to ascertain whether it contained a weapon. Mindful of the caveat that when the safety of the police officer is at stake, courts should be wary of making the test of sufficient suspicion to warrant a search for weapons too high, *United States v. Riggs*, 474 F.2d 699, 705 (2d Cir.), *cert. denied*, 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973), it appeared to me that examination of the envelope was a reasonable and prudent act. Therefore, I found no violation of defendant's Fourth Amendment rights and sustained the search. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

■ However, the testimony elicited at the reopened suppression hearing has radically changed the picture. I do not believe on the present facts that the search can be sustained as a contemporaneous search to discover the fruits of crime and to prevent their destruction, *Warden v. Hayden*, 387 U.S. 294, 306–7, 87 S.Ct. 1642, 1649–50, 18 L.Ed.2d 782, 791–92 (1967); nor can it be justified as a search to discover weapons that might be used either to harm the officers or to effectuate defendant's escape, *Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964), or to discover instruments used to commit a crime, *Agnello v. United States*, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, 148 (1925). Nor is there any showing of reasonable or probable cause to believe that contraband or seizable material was secreted in the car. *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970); *Coolidge v. New Hampshire*, 403 U.S. 443, 460, 91 S.Ct. 2022, 2034, 29 L.Ed.2d 564, 579 (1971). As I indicated in the prior disposi-

tion, the plain-view justification, *see e. g.*, *United States v. Candella*, 469 F.2d 173 (2d Cir. 1972), seems inapplicable, and this situation does not appear to be covered by *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427, 440 (1973) or *Gustafson v. Florida*, 414 U.S. 260, 265–6, 94 S.Ct. 488, 491–92, 38 L.Ed.2d 456, 461 (1973), which legitimate a search of the person as incident to an arrest for a traffic infraction.

The police officers did not have probable cause to believe the defendant and his companions had engaged in any criminal activity or were carrying contraband in the car. They stopped the car because of a traffic violation. Though no arrest was made up to this point, after the defendant could not produce a valid driver's license, Officer Esposito issued a summons to him. The government argues that the traffic violation presented the officers with probable cause to arrest the occupants of the car, thereby in effect rendering the search incident to valid arrest. In support of this theory for justifying the search, the government cites *United States v. Jenkins*, 496 F.2d 57 (2d Cir. 1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975); *United States v. Riggs, supra*; *United States v. Skinner*, 412 F.2d 98 (8th Cir.), *cert. denied*, 396 U.S. 967, 90 S.Ct. 448, 24 L.Ed.2d 433 (1969). *See also, United States v. Boston*, 330 F.2d 937 (2d Cir.), *cert. denied*, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053 (1964). In each of those cases, however, probable cause to arrest existed prior to the search—either through an informer's lead or through the personal observations of the police officers. Thus, in *Boston, supra*, there was probable cause to believe, prior to any search, that non-tax paid distilled spirits were being transported. Similarly *Riggs, supra*, (probable cause to believe that the individual had committed a crime was founded on observations of activities of the individual and reports received from out of state police); *Jenkins, supra*, (probable cause to believe that a motorcycle was stolen); and *Skinner, supra*, (descrip-

tion that defendant was the same man who had robbed a bank). In each of those cases, the fact that the search preceded the arrest was held not to be critical because the police had every reason to and intention of arresting the person stopped. The arrest is further justified where it does not rest, as it did here, upon the fruits of the seizure. *See United States v. Boston, supra,* 330 F.2d at 938. In contrast, the testimony in this case reveals that the police were stopping defendant's car for a minor traffic infraction and had no *a priori* intention of arresting anyone. Defendant's subsequent arrest was not predicated upon the traffic violation but stemmed from the investigation of the contents of the envelope discovered during the search of the vehicle.

Furthermore, even were we to adopt the expansive theory suggested by the government, there is no basis upon which the search here can be deemed reasonable. Taking Oben's version of the incident that the search took place after the police had discovered a small, broken knife and had ordered the two passengers out of the car, the search went well beyond that necessary to insure the officers' safety and cannot be justified. The knife apparently was a small pocket knife, and it was broken. At the time it was discovered the driver was standing outside the car. The officer clearly did not consider the knife a lethal weapon since he threw it back into the glove compartment. Indeed, until Oben testified at the second hearing, Officer Senerchia had forgotten about the knife entirely. Moreover, if Officer Senerchia's recollection of the events is accepted, the knife could not conceivably have played any part in triggering the search since it was found after the search had been made.

By all accounts, the envelope was almost entirely hidden with only a corner of it revealed from under the floor mat. There was no testimony at the second hearing about a bulging container which could have caused concern that a weapon might have

been concealed. From Senerchia's testimony on November 19th, it appears that without moving the envelope out from under the mat, he could not tell whether anything was in it, and it certainly could not have triggered concern that it contained a hidden weapon. Of even greater significance, as a critical factor on which to gauge the officers' testimony, is the undisputed fact that neither the defendant nor the passengers were searched personally. Such a search would seem to be clearly legitimate under the *Robinson* yardstick, and would have lent some credence to the government's argument. While the police officers' subjective view of the facts is not determinative, it must be assessed in making an objective evaluation of the reasonableness of the action at issue. *United States v. Tramontana,* 460 F.2d 464, 466 (2d Cir. 1972); *United States v. Jenkins, supra,* 496 F.2d at 72–3.

The standards for and scope of a search incident to an arrest have not been clearly defined. In *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969), it was held reasonable to search the area in the arrestee's immediate control where he might reach to grab a weapon or evidentiary items. The search here in issue went beyond the scope of that allowed by *Chimel.* Here, the officer's most frequently stated reason for removing the envelope from under the mat and examining it was to obtain better identification of the driver. That, however, is not sufficient justification to support a warrantless search and seizure under the circumstances of this case.

The jury has found the defendant guilty. I believe that the verdict is correct, but it cannot be sustained on the basis of the tainted evidence introduced to support the charge. Accordingly, the defendant's motion to suppress the contents of the envelope taken from him (the checks introduced at trial) is granted and the verdict is set aside.

SO ORDERED.