No. 47,929

STATE OF KANSAS, *Appellee*, v. BILLY BARNES, *Appellant*.

(551 P. 2d 815)

Opinion filed June 12, 1976.

*Jack Peggs*, of Smith, Shay, Farmer & Wetta, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Gregory G. Justis,* legal intern, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Appellant Billy Barnes brings this appeal from jury convictions on three counts of aggravated robbery (K. S. A. 21-3427) and one count of robbery (K. S. A. 21-3426).

Appellant contends that he was arrested and searched by police without a warrant and without probable cause, and that all evidence obtained at the time of his arrest was improperly admitted by the court during his trial.

A brief recitation of the facts will suffice as a background for examination of the points raised on appeal. On December 4, 1974, three separate robberies took place in Wichita. Shortly after 2:00 a. m. two men appeared at the Town House Motel, confronted Rodney Hurt, a night auditor, and demanded money. One robber brandished a pistol and threatened Hurt's life. Hurt turned over motel receipts totaling $215.00. He was told to lie on the floor while the robbers departed. Hurt subsequently telephoned the Wichita Police Department, reported the robbery and described the culprits to the officer in charge of the police department. One robber was described as a twenty-four year old black male, approximately five feet seven inches in height, wearing a black hat pulled down over his face and a three-quarter length dark-colored coat. Hurt also noted that his assailant had a gold tooth.

The second robbery took place 40 minutes later at the Sheraton Motor Inn. A night clerk, Joe Henderson, was approached by a lone gunman and cash was demanded. Henderson gave the robber $417.00. Henderson's description of the robber was similar to that given by Rodney Hurt. In addition he advised the police that the man had patches of adhesive tape covering his cheeks.

At 9:50 p. m. of that same day the Woodland Food Market was robbed by two men. Money totaling $1,024.90 was taken from cash registers and $10.00 was taken from Frank Luttrell who was visiting the store at the time of the robbery. The police who investigated the crime obtained a description of one of the robbers. He was a black male about five feet seven inches to six feet in height with tattoos on his cheeks and a gold tooth.

Sometime later Wichita police officer Pate heard a police radio report of these robberies. The report included a description of the

man with a black floppy hat, dark three-quarter length coat, tatoos on his cheeks and a gold tooth. The "pick-up order" included a further description of the man as being black, height around five feet eight, weight about one hundred twenty-five pounds and wearing blue jeans.

At 2:00 a. m. on the morning following the last robbery officers Pate and Blevins stopped in a restaurant adjoining the Wichita bus depot. Pate noticed appellant seated at a table. As Pate approached, appellant arose, hurried out of the restaurant, and in doing so appellant attempted to conceal his face with the collar of his coat. Pate and Blevins followed and located him in a parking lot nearby. When discovered, appellant was holding the collar of his coat over his face. The officers asked appellant his name and when appellant answered the officers noticed he had tattoos on his cheeks and a gold tooth. His clothing, weight and height fit the description which had previously been broadcast. Officer Pate recalled that broadcast.

Pate then frisked appellant for weapons and discovered a large wad of paper money in his pants pocket. Pate returned the money to appellant, arrested and handcuffed him and advised him of his rights under *Miranda*. Pate then thoroughly searched appellant. A black floppy hat was discovered in appellant's coat pocket. Currency totaling $299.16, a pair of handcuffs and a one-way bus ticket to Dallas, Texas, were obtained in the search. Appellant was transported to a Wichita police station and subsequently charged with the four robberies.

On appeal appellant argues that the trial court erred when it refused to suppress physical evidence taken from him at the time of his arrest. Appellant contends his arrest was invalid and the evidence obtained incident to the arrest was inadmissible under the rules announced in *Mapp v. Ohio*, 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684. He states that the "frisk" conducted by Pate to discover weapons was unreasonably broad in its scope and constituted a general exploratory search beyond the limits defined in *Terry v. Ohio*, 392 U. S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and its progeny. Appellant claims that Pate had no probable cause to believe appellant had committed the robberies until he discovered the money during the "frisk." Appellant concludes that the evidence supporting the search was illegally obtained from the "frisk," this tainted the arrest transaction and rendered it invalid.

In appellant's view the initial "frisk" was conducted under K. S. A. 22-2402 which provides:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a crime and may demand of him his name, address and an explanation of his actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may search such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person."

Appellant argues that the "frisk" under the foregoing statute should have been limited to what was minimally necessary to learn whether he was armed, and to disarm him if weapons were discovered.

It is fundamental that a search incidental to an arrest may not precede the arrest where the evidence discovered during the search forms the basis of probable cause for the arrest. (*Sibron v. New York,* 392 U. S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889.)

In the present case, however, it can be said that officer Pate had probable cause to arrest appellant prior to the "frisk."

It has been held that probable cause to support a warrantless arrest exists prior to the arrest if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been or is being committed by the person to be arrested. (*State v. Walker,* 217 Kan. 186, 535 P. 2d 924; *State v. Little,* 201 Kan. 94, 439 P. 2d 387.) It is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt nor must it be sufficient to prove that guilt is more probable than not. It is only necessary that the evidence leads the officer to believe that guilt is more than a mere possibility. (*State v. Curtis,* 217 Kan. 717, 538 P. 2d 1383.)

The permissible extent of a warrantless search during an arrest made on probable cause is set forth in K. S. A. 22-2501 as follows:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

"(a) Protecting the officer from attack;

"(b) Preventing the person from escaping; or

"(c) Discovering the fruits, instrumentalities, or evidence of the crime."

Where there is probable cause for an arrest, a search of an accused's person incidental to arrest may either precede or follow the formal arrest if the events closely follow. (*Henderson v. United States*, 405 F. 2d 874 [5th Cir. 1968], cert. den. 395 U. S. 906, 23 L. Ed. 2d 219, 89 S. Ct. 1747; *United States v. Skinner*, 412 F. 2d 98 [8th Cir. 1969], cert. den. 396 U. S. 967, 24 L. Ed. 2d 433, 90 S. Ct. 448; *United States v. Brown*, 463 F. 2d 949 [D. C. Cir. 1972]; *People v. Simon*, 45 Cal. 2d 645, 290 P. 2d 531; *Jones v. People*, 167 Colo. 153, 445 P. 2d 889; *Cannon v. State*, 235 Md. 133, 200 A. 2d 919, cert. den. 379 U. S. 883, 13 L. Ed. 2d 89, 85 S. Ct. 152; and *State v. Murphy*, 2 Or. App. 251, 465 P. 2d 900, cert. den. 400 U. S. 944, 27 L. Ed. 2d 248, 91 S. Ct. 246.)

In an analogous factual situation in *United States v. Riggs*, 474 F. 2d 699 (2nd Cir. 1973), cert. den. 414 U. S. 820, 38 L. Ed. 2d 53, 94 S. Ct. 115, Judge Friendly reviewed the narcotics conviction of a defendant who had been searched prior to formal arrest. The court found that the U. S. marshals had probable cause to arrest at the time of the search and they had a reasonable suspicion the defendant was armed. Under these circumstances a search of defendant's person was held valid and evidence obtained from the search was admissible at trial. The justification for such an intrusion is the probable cause to believe that the individual has committed a crime and the need for immediate action to prevent the use of weapons against the arresting officer or destruction of evidence of the crime. (*Chimel v. California*, 395 U. S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.) Postponement of the further instrusion of arrest does not remove the justification for the search and in no way prejudices the individual's Fourth Amendment rights. (*United States v. Riggs*, supra.)

In the present case the police officers had probable cause to arrest appellant at the time of the initial limited search. Appellant possessed the physical attributes of the robber being sought, including tattooed cheeks and a gold tooth. Appellant's appearance matched the description the officers had previously obtained by police radio dispatch. He was dressed in clothing similar to that reportedly worn by the robber. Finally, appellant's furtive behavior when the officers entered the station restaurant fortified a reasonable belief that appellant had committed the armed robberies the previous day. The search which disclosed the currency was valid, because it was predicated upon probable cause for appellant's arrest. The

fruits of that search, the hat and other items discovered in the search, were properly admitted as evidence by the lower court. The search was properly made in connection with a valid arrest.

Appellant next argues that a line-up conducted by police, at which he was identified by his victims, was impermissibly suggestive and raised a substantial likelihood of irreparable misidentification. Appellant complains that he was the shortest individual in the line-up and that the descriptions given to the police did not in all respects conform to his physical stature. He therefore contends the line-up identifications were suspect and that subsequent in-court identifications by the victims were tainted and untrustworthy.

In *State v. Clark*, 218 Kan. 726, 735, 544 P. 2d 1372, this court found that a photographic line-up in which the defendant was the only heavy-set person not wearing glasses was not impermissibly suggestive. Similarly in this case the fact that defendant was the shortest individual in the line-up did not suggest that he should be identified by those who viewed it. The actual variances in height were only a few inches. All of the victims had an opportunity to view the robber for several minutes at the time the crimes were committed. Their subsequent identifications of appellant were positive. Appellant does not contend that anyone suggested to the victims whom they should identify. Although line-ups that are unnecessarily conducive to mistaken identification are forbidden by the due process clause of the federal constitution, under the totality of the circumstances in this case it may be said that the line-up was not so suggestive as to give rise to a substantial likelihood of misidentification. (See *State v. Colin*, 214 Kan. 193, 519 P. 2d 629.)

Finally appellant complains that the trial court improperly admitted a statement that he made to the police following his arrest regarding his whereabouts at the time the crimes were committed. Defense witness Kenneth Stanford testified that he and appellant were together at the Grand Hotel on the evening of December 4. On rebuttal the state produced the testimony of detective Harlie Puckett, who stated that appellant had previously told him that he was playing pool at the Golden Bell Restaurant that evening. The trial court admitted Puckett's rebuttal testimony following a hearing out of the presence of the jury in which the court determined that appellant had made his alibi statement to Puckett voluntarily following a waiver of his constitutional rights.

Voluntary statements made to police officers by a defendant who has been given warnings as to his constitutional rights are admissible

as evidence at his trial. (*State v. Melton,* 207 Kan. 700, 486 P. 2d 1361; *State v. Foster,* 202 Kan. 259, 447 P. 2d 405.)

Trial courts have broad discretion in determining the use and extent of relevant evidence in rebuttal. (*State v. Norwood,* 217 Kan. 150, 535 P. 2d 996; *State v. Neff,* 169 Kan. 116, 218 P. 2d 248.)

As a general rule any relevant evidence is admissible to refute alibi testimony in a criminal action. (See 22A C. J. S., Criminal Law, § 619, p. 435; and 2 Underhill's Criminal Evidence, 5th Ed., § 444, p. 1120.)

Evidence which could have been admitted in the prosecution's case in chief, but which was not, may be admitted in rebuttal to contradict some new fact or circumstance brought forth by the defendant's evidence. (*State v. Nirschl,* 208 Kan. 111, 490 P. 2d 917.)

The precise question raised by appellant is: When the defendant does not take the witness stand is a voluntary statement made by him after *Miranda* warnings are given admissible to impeach the testimony of another alibi witness?

In *State v. Davis,* 67 N. J. 222, 337 A. 2d 33, the New Jersey court held a statement by defendant was inadmissible for that purpose when no *Miranda* warning was given. It is not necessary for us to examine the soundness of that decision for in our present case the *Miranda* warning was given. We note in passing that in *Harris v. New York,* 401 U. S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, it is held a non-*Miranda* statement made by defendant may be used to impeach the credibility of defendant if he takes the stand as a witness. It is difficult to understand why a non-*Miranda* statement would be admissible to impeach the credibility of the defendant as a witness and not be admissible to impeach an alibi witness sponsored by defendant. However, we do not reach the question for the proper warning was given in this case.

We hold the voluntary in-custody statement to police officers made by a defendant is admissible to rebut the testimony of an alibi witness even though the defendant does not take the witness stand at his trial.

In the present case the appellant's statement was made after full *Miranda* warnings and after a written waiver was signed by appellant. Although the evidence was conflicting as to whether appellant voluntarily made the exculpatory statement, this court has repeatedly pointed out that in determining the admissibility of a statement of the defendant obtained during custodial interrogation the trial court must weigh any conflicting evidence and make find-

ings that the defendant voluntarily, knowingly and intelligently waived his Fifth and Sixth Amendment rights. When this is done the court's findings will not be disturbed on appellate review. (See *State v. Soverns*, 215 Kan. 775, 777, 529 P. 2d 181, and cases cited therein.)

In this case officer Puckett's testimony regarding appellant's exculpatory alibi statement, made after proper *Miranda* warnings and waiver of rights, was properly admitted by the trial court to refute the testimony of appellant's alibi witness.

The judgment of the trial court is affirmed.