(5 P.3d 531)

No. 81,171

STATE OF KANSAS, *Appellee*, v. DAVID D. LEWIS, *Appellant*.

Opinion filed April 21, 2000.

*Mary D. Prewitt*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Charles R. Reimer* and *David Lowden*, assistant district attorneys, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before JUSTICE DAVIS, presiding, DAVID J. KING, District Judge, assigned, and PHILIP C. VIEUX, District Judge, assigned.

DAVIS, J. David D. Lewis appeals his convictions of aggravated robbery, aggravated burglary, and kidnapping. He appeals raising three issues: (1) The court erred in determining that the defendant put his character in issue, thus allowing the State to introduce his

prior convictions; (2) the court erred by allowing the State to elicit comments on his post-*Miranda* silence; and (3) the evidence was insufficient to support the charge of aggravated kidnapping. We reverse and remand for further proceedings based upon the defendant's first contention.

At approximately 9 p.m. on October 25, 1997, the defendant and another man forced their way into the garage apartment of Marcell Eads, where Charles Sparks, a temporary resident, was there watching TV. Sparks heard a noise on the stairway and went to the apartment door. He was speaking with the defendant and his accomplice when the defendant reached through the door and pushed Sparks in the face, forcing him back into the apartment. Sparks grabbed the defendant's hand and struggled to get away. However, Sparks stopped struggling when the second man shoved something into Sparks' ribs and indicated it was a gun. Sparks was then led to a couch in the front room and was seated.

The defendant put his hands over Sparks' eyes and plotted with the other man to take some items. The other man indicated that he wanted to shoot Sparks. For the next few minutes, Sparks pleaded for his life and said he would not call the police. The assailents eventually put a sock into Sparks' mouth and a pillowcase over his head. The defendant ordered Sparks to hand over his wallet and his watch. The defendant then took Sparks' identification card and threatened that he now knew where to find Sparks if he called the police. The defendant remained by Sparks while the other man ransacked the apartment. Several items belonging to Eads, as well as a black bag belonging to Sparks, were taken.

When the men were ready to leave the apartment, the defendant again threatened to shoot Sparks. Sparks again insisted he would not tell the police and that he would not get up. The defendant told Sparks he would be watching to see if Sparks left. Sparks heard the door open and shut but he did not move. After a few minutes, Sparks heard the defendant say, "You're doing good, Charles. If you'd moved I'd blowed your fucking head off."

Sparks never heard the defendant leave, so he sat there for approximately 10 to 15 minutes. Sparks decided to take the pillowcase

off his head. He determined no one was in the apartment and ran to the landlord's house to call the police.

Soon after the incident, police officers observed a truck leaving a pool hall without its headlights on. Unaware of the burglary, they followed the truck and observed the truck run a stop sign. After the officers activated their emergency equipment, the truck sped up as if to elude them. The truck proceeded approximately four blocks before stopping. However, at one point, it slowed to a near stop and a passenger jumped out and ran away between the houses. The officers continued pursuing the truck. A half a block later, the truck slid into the curb while attempting to negotiate a turn, and the driver jumped out and ran. After a short foot chase, the officers apprehended the defendant.

The police took the defendant to the location of the truck, and Sparks identified the defendant and the items taken from the apartment. He later told the police that his black watch had been taken. The police remembered taking a black watch from the defendant upon his arrest. Upon seeing the watch, Sparks immediately identified it as his.

The defendant testified at trial that he had been at a pool hall earlier that evening when he was approached in the parking lot by a man named T.J. T.J. asked the defendant to help move some belongings from his wife's house because they had recently separated. The defendant agreed to use his truck to help T.J. for $10. The defendant went back into the pool hall briefly, at which time another man had climbed into the bed of the truck. T.J. indicated the other man was going to help also.

The defendant testified that T.J. directed him to an area near Eads' apartment but had the defendant remain in the truck while the other two went to retrieve the belongings. A while later, T.J. returned for the defendant and directed him to an alley where the other man was waiting with a bundle of belongings wrapped in a blanket. The bundle was loaded into the back of the defendant's truck, and the second man returned to the apartment. T.J. and the defendant returned to the pool hall.

According to the defendant, T.J. revealed he did not have $10 for the use of the truck but instead gave the defendant $5 and a

watch. They left the pool hall and were followed by police. When the police activated their lights and siren, T.J. confessed to the defendant that the items in the truck were stolen and jumped out of the truck. The defendant said he panicked and attempted to elude officers but was caught when he drove over a curb.

The defendant was interviewed by a detective. He was given *Miranda* rights. However, when the officers asked to record an interview with him, he indicated he did not want to talk further without a lawyer. The prosecution made a point of the defendant's silence during its recross examination.

Prior to commencing cross-examination, the State asked for a ruling as to whether the defendant had put his character at issue and whether prior convictions for burglary could be admitted into evidence. The court agreed that the defendant had put his character at issue. Upon cross-examination, the prosecutor elicited an admission from the defendant that he had prior convictions for burglary, theft, and worthless checks. The court said a limiting instruction would be given to the jury. However, at the instructions conference, after recognizing that both he and the State had been confusing the applicable statutes, the judge decided not to give an instruction on the prior crimes evidence. The jury returned verdicts of guilty on charges of aggravated robbery, aggravated burglary, and kidnapping.

## (1) Character evidence

On direct examination, the defendant stated that he was a plant manager for an acetylene plant and that he worked long hours. On the day in question, he stated that he had taken an infrequent day off and had run errands with his fiance. He mentioned that his son was going to ROTC training that day and that he was going to be married at a church. The defendant further stated that after his fiance went to work, he proceeded to drink and "tie one on," which he very seldom did because of his job responsibilities. Relating to the night's events, he stated he was drinking at a bar when T.J. asked him for help moving. Upon going to a location specified by T.J., Lewis said T.J. and another man put the stolen items in the back of his truck. When defense counsel asked whether he had

looked at the items, the defendant unresponsively stated, "Well, not right off I didn't because that was that man's property. I didn't have no business going through his property. That would have been disrespectful to him."

Before beginning cross-examination of the defendant, the State argued that the defense had put character at issue; the court agreed, noting the defense objection. The trial court found that the defendant had on a number of occasions been warned to answer the defense counsel's questions without offering unsolicited information. The court also found that the defendant continued to be unresponsive because he was trying to bolster his credibility.

The facts are not in dispute. Our review of the defendant's direct examination does not reveal an attempt by the defendant to put his character in evidence. The only response that would come close to suggesting this was the defendant's response to the question whether he had looked at the bundled up items: "Well, not right off I didn't because that was that man's property. I didn't have no business going through his property. That would have been disrespectful to him." It was essentially this statement which formed the basis of the court's ruling that the defendant opened the door to the admission by the State of his prior convictions for burglary, theft, and worthless checks.

The standard of review on the admissibility of character evidence under K.S.A. 60-447 is abuse of discretion. *State v. Blackburn*, 251 Kan. 787, 792, 840 P.2d 497 (1992). Judicial discretion is only abused when no reasonable person would take the view adopted by the trial court. *State v. Stallings*, 262 Kan. 721, 726, 942 P.2d 11 (1997).

K.S.A. 60-447(b)(ii) provides that in a criminal case, the State may introduce evidence of an accused's bad character only after the accused has introduced evidence of his or her good character. In *State v. Stokes*, 215 Kan. 5, 7, 523 P.2d 364 (1974), the Kansas Supreme Court stated:

"The purpose of the statute, in combination with K.S.A. 60-421, is to permit a defendant to testify in his own behalf without having his history of past misconduct paraded before the jury. [Citations omitted.] He is entitled, like any other witness, to let the jury know who he is so that it may properly fit him into the pattern of

events brought out at the trial. Of course, when the testimony of either the defendant or any other witness for the defense goes beyond those bounds and attempts to characterize the defendant's past life as blemish-free, or makes reference to specific prior incidents, he forgoes to that extent the protection of the statute."

There is no evidence to support a conclusion that the defendant tried to characterize his past life as blemish free or make other assertions of his good character. While it is true that the defendant's answers were very expansive and not always responsive, they do not as a matter of law put the defendant's good character at issue. As a result, the trial court committed reversible error in admitting the evidence of his prior convictions. See *State v. Quick*, 229 Kan. 117, 122, 621 P.2d 997 (1981) (reversing conviction where trial court allowed the introduction of evidence of prior convictions even though defendant had not put his character at issue).

(2) Post-*Miranda* silence

The defendant testified that he was paid $5 and a black watch for using his truck to help a man named T.J. move belongings of T.J.'s wife. On cross-examination, the State asked the defendant about his recollection of the night of the robbery. When the defendant admitted that he did not tell an officer about receiving the $5 and the black watch as payment, he explained by stating, "I told Detective Wise that I chose not to say nothing further until I had a lawyer present. That is why it's not in his report." In the course of explaining the omission, the defendant stated he had signed the *Miranda* rights form "under duress" because he was intoxicated and did not want to talk without a lawyer present, but the detective had told him he could not have a lawyer until he signed the form. The black watch had been identified by the victim as a watch taken by the defendant and found to be in the defendant's possession by police.

During recross, the State actively elicited testimony about the defendant's post-*Miranda* silence. In addition to the defendant's testimony, the State called the detective and elicited testimony that the defendant had not allowed him to record a statement and had refused to talk further.

The defendant contends the State impermissibly elicited testimony about the defendant's silence following *Miranda* warnings in violation of *Doyle v. Ohio*, 426 U.S. 610, 618, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). *Doyle* holds that a prosecutor may not use a defendant's silence after receiving *Miranda* warnings to impeach his or her exculpatory story at trial. Kansas adopted *Doyle* in *State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976).

We note that the defendant's claim is barred by his failure to object at trial. Defense counsel did not object to the questioning of either witness on *Doyle* grounds. The Kansas Supreme Court requires a timely and specific objection to preserve a *Doyle* issue for appeal. *State v. Haddock*, 257 Kan. 964, 973, 897 P.2d 152 (1995). The defendant did not object to either witness' testimony, so the issue is not properly preserved for appeal.

Even if we were to consider defendant's claim, no *Doyle* violation occurred. The evidence was elicited in response to the defendant's testimony implying the officer forced him to sign the *Miranda* waiver. The defense attempted to use the defendant's claim that he was "under duress" to impeach the testimony of the detective. As such, the State's questions on recross did not constitute a violation of the *Doyle* rule. See *State v. Brinkley*, 256 Kan. 808, 820-21, 888 P.2d 819 (1995).

### (3) Sufficiency of evidence on kidnapping charge

While we reverse and remand this case based upon trial court error regarding the admission of bad character evidence, we must also address the defendant's sufficiency of evidence argument. If the defendant were to prevail upon this claim of error, the defendant would be entitled to an acquittal on the charge of kidnapping.

When Sparks first encountered the defendant and another man who was the defendant's accomplice, Sparks was standing in an apartment entranceway. The defendant and the other man were at the top of the stairs leading to the apartment. A conversation took place during which the defendant reached through the door, pushed Sparks in the face, and forced him back into the apartment. Sparks grabbed the defendant's hand and struggled to get away.

Sparks stopped struggling, however, when the accomplice shoved something into Sparks' ribs and indicated it was a gun. Sparks was then led to a couch in the front room and was seated. A sock was placed into Sparks' mouth and a pillowcase over his head. On at least two occasions, Sparks was threatened with being shot if he got up.

At the close of the State's evidence, the defendant renewed a previously filed and denied motion to dismiss and also moved for judgment of acquittal. The trial court denied both motions. The thrust of the motions was that the confinement alleged and set forth at trial was not of such a nature as to constitute kidnapping. The defendant argues that the State failed to provide evidence that the movement or confinement of the victim substantially facilitated the commission of the robbery or lessened the risk of detection. We disagree with the defendant.

The standard of review for questions involving sufficiency of the evidence and for a motion for judgment of acquittal is the same. *State v. Torrance*, 22 Kan. App. 2d 721, 727, 922 P.2d 1109 (1996). The test is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *Torrance*, 22 Kan. App. 2d at 727. In applying this test, an appellate court does not reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine factual questions. *State v. Knetzer*, 3 Kan. App. 2d 673, 674, 600 P.2d 160 (1979).

In *State v. Buggs*, 219 Kan. 203, 216, 547 P.2d 720 (1976), the Kansas Supreme Court held:

"[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(a) Must not be slight, inconsequential and merely incidental to the other crime;

(b) Must not be of the kind inherent in the nature of the other crime; and

(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection."

*Buggs* has been applied to literally hundreds of fact scenarios, and the courts repeatedly return for guidance to the examples originally given:

"A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is. The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is. The list is not meant to be exhaustive, and may be subject to some qualification when actual cases arise; it nevertheless is illustrative of our holding." 219 Kan. at 216.

The key to the instant case is that the forced movement of the victim from the open doorway of the apartment back into the living room, a place of seclusion, and the holding there by force, substantially made the crime of aggravated robbery easier and substantially lessened the risk of detection. The facts of the instant case are substantially the same as *Buggs*. In *Buggs*, a mother and son were approached by two men as they were leaving work for the night at a Dairy Queen. The victims were forced back inside the building and the mother was asked where the money was. After the mother handed the store receipts to the defendants she was raped. The Supreme Court found sufficient evidence to uphold the kidnapping conviction. 219 Kan. at 216-17. In addition, in *State v. Zimmerman*, 251 Kan. 54, 59, 833 P.2d 925 (1992), the victim was hit on the head and dragged from the living room through a sliding glass door and into the laundry room. The Supreme Court found that a rational factfinder could have found beyond a reasonable doubt that the defendant moved the victim to a place of seclusion, thereby substantially lessening his risk of detection. The kidnapping conviction was upheld.

In the present case, Sparks was first encountered in the entranceway to the apartment and forced back inside the apartment to a place of seclusion. Once there, he was gagged and a pillowcase was placed over his head. He was warned that any movement would result in his death. Under such circumstances, a rational factfinder could find that Sparks was moved or confined and that such activity substantially aided in the commission of the crime and lessened the risk of detection. Thus, there was sufficient evidence

from which a rational factfinder could have found the defendant guilty of kidnapping.

Reversed and remanded to the trial court for further proceedings.