No. 89,008

STATE OF KANSAS, *Appellee*, v. ERIC J. CONN, *Appellant*.

(99 P.3d 1108)

Opinion filed November 5, 2004.

*Janine Cox*, capital appellate defender, argued the cause and was on the briefs for appellant.

*Vernon E. Buck*, assistant county attorney, argued the cause, and *J. Marcus Goodman*, county attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: After Eric Conn was stopped for a traffic violation, he was arrested for driving without having a proper driver's license and failing to provide proof of insurance. Conn provided the arresting officer with a name and date of birth and stated that he had a valid driver's license issued by the State of Texas. When dispatch advised there was no record of a license issued in the name Conn had provided, officers conducted a search of the automobile in an effort to locate proof of identification. Officers also found methamphetamine and various items of drug paraphernalia. After being transported to jail, Conn was given an implied consent advisory and asked to consent to a urine test. The sample tested positive for methamphetamine. Conn filed a motion to suppress the evidence seized in the search of the car and a motion in limine to prohibit introduction of evidence regarding the urine test results. Both motions were denied by the trial court.

On direct appeal, the Court of Appeals, in an unpublished opinion, determined the evidence should have been suppressed and reversed Conn's drug convictions. *State v. Conn*, No. 89,008, filed August 29, 2003. We granted the State's petition for review. Conn did not cross-petition for review of the Court of Appeals' determination of an issue related to jury instructions.

Upon review, we conclude that the search of the automobile was lawful as a warrantless search because probable cause existed to believe the crime of obstruction of official duty had occurred and exigent circumstances allowed the immediate, warrantless search of the automobile for evidence that would establish that the name initially provided by Conn was false. Therefore, we affirm the trial court and reverse the Court of Appeals on this issue. However, we agree with the Court of Appeals that Conn's consent to the urinalysis was coerced.

With one exception not relevant to our analysis, the parties accept these facts regarding the search set forth in the Court of Appeals majority opinion:

"Trooper Phelps of the Kansas Highway Patrol stopped a vehicle because one of its headlights was inoperable. Conn was driving; the vehicle contained one passenger. Conn told the trooper that he did not have his driver's license with him and provided expired insurance documents.

"Sitting in the patrol car, Conn gave Trooper Phelps a false name and date of birth, stating that he had a valid Texas driver's license. After the dispatcher was unable to verify Conn's information, Phelps advised Conn that he was under arrest for driving without a license and having no proof of insurance. Phelps returned to Conn's vehicle to ask the passenger for the driver's name. After the passenger responded that she only knew that the driver's first name was Brian, the trooper returned to the patrol car, handcuffed Conn, and gave him the *Miranda* warnings.

"After waiving his rights, Conn gave his correct name and date of birth, as well as advising the trooper that he had a Colorado driver's license. A computer check verified the information and disclosed that Conn had an outstanding felony warrant.

"Trooper Phelps asked Trooper Tucker, who had responded to Phelps' call for assistance, to look for information on Conn's identity around the driver's area in the vehicle. Tucker ordered the passenger to exit the vehicle, obtained her identification, and advised her that he was going to search for information on the driver's identity. As Tucker entered the vehicle, the passenger pushed the trooper aside and grabbed a box that was situated between the driver's and passenger's seats. As the passenger tried to throw the box into the back of the vehicle, Trooper Tucker arrested her.

"The box contained drug paraphernalia and methamphetamine residue. Trooper Tucker continued the search, locating Conn's Colorado driver's license in a wallet behind the driver's seat. The search also uncovered drugs and items that are commonly used for the manufacture and ingestion of methamphetamine."

Conn filed a pretrial motion to suppress the evidence seized during the search. The parties stipulated that the trial court could base its decision on the transcript of the preliminary hearing. The trial court denied the motion to suppress. In making oral findings after the hearing on the motion to suppress, the trial judge stated: "I am convinced from the evidence that this is a search incident to arrest . . . ." Conn and the Court of Appeals focus upon this statement. However, in addition, the written journal entry contains a different reason for upholding the search which does not refer to a "search incident to arrest." The journal entry states:

"[T]he Court finds that the search of the vehicle operated by the defendant [Conn] was conducted at least in part because of the defendant's obstruction of the official duty performed by Trooper Elwood Phelps by falsely identifying himself, and that the search of the passenger's compartment of the vehicle for proof of the defendant's [identity] and driving status and which led to the discovery of illegal contraband was justified under the Fourth Amendment to the United States Constitution and Section 15 of the Bill of Rights to the Kansas Constitution."

A jury convicted Conn of attempted manufacture of methamphetamine, possession of pseudoephedrine as a precursor to methamphetamine, possession of methamphetamine, possession of marijuana, felony possession of drug paraphernalia, misdemeanor possession of drug paraphernalia, obstruction of official duty, and driving without insurance. The jury acquitted Conn of driving without a driver's license. The trial court granted Conn's motion for judgment of acquittal on the charges of attempted manufacture of methamphetamine and felony possession of drug paraphernalia.

Conn was sentenced to a controlling term of 44 months' imprisonment. He timely appealed.

### Did the Court of Appeals Err in Ruling That Evidence Discovered During the Search of Conn's Vehicle Should Have Been Suppressed?

When a motion to suppress evidence is filed, the State bears the burden of proving to the trial court the lawfulness of the search and seizure. *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003). When the facts material to a decision of the court on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law subject to unlimited review. *State v. Rexroat*, 266 Kan. 50, 53, 966 P.2d 666 (1998).

The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and Section 15 of the Kansas Constitution Bill of Rights proscribe all unreasonable searches and seizures. Searches conducted without a valid search warrant are deemed per se unreasonable unless a specifically established and well-delineated exception to the warrant requirement applies. *Boyd*, 275 Kan. at 273. Generally recognized exceptions include: consent; search incident to a lawful arrest; stop and frisk; probable cause to search accompanied by

exigent circumstances, of which hot pursuit is one example; the emergency doctrine; inventory searches; plain view; and administrative searches of closely regulated businesses. *State v. Mendez,* 275 Kan. 412, 66 P.3d 811 (2003).

In this case, the trial court, in oral findings, determined that the search was valid as a search incident to arrest and in written findings made broad statements, without reference to a search incident to arrest, regarding the search being justified because of Conn's obstruction of official duty.

### Search Incident to Arrest

In Kansas, the permissible circumstances, purposes, and scope of a search incident to arrest are controlled by statute. *State v. Anderson,* 259 Kan. 16, 910 P.2d 180 (1996). K.S.A. 22-2501 provides:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of
"(a) Protecting the officer from attack;
"(b) Preventing the person from escaping; or
"(c) Discovering the fruits, instrumentalities, or evidence of the crime."

In *Anderson,* this court rejected the view that case law applying the Fourth Amendment, in particular *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, *reh. denied* 453 U.S. 950 (1981), meant that a search of an automobile could automatically be conducted when an occupant was arrested, noting that K.S.A. 22-2501 "may possibly be more restrictive than prevailing case law on the Fourth Amendment would permit, but this does not alter the plain language of the statute." 259 Kan. at 22. Anderson was stopped for a traffic offense and arrested for driving on a suspended license and for an outstanding traffic warrant. The officer then searched the car for drugs. This court held that the search was purely a search incident to arrest and was improper because it was not conducted for any of the purposes listed in K.S.A. 22-2501. 259 Kan. at 24. Specifically, the court found the officer was not concerned for his personal safety, nor was he looking for evi-

dence of the crimes for which the defendant was arrested. 259 Kan. at 19.

Similarly, the trooper in this case did not indicate any concern for safety. The trooper's testimony was that the purpose of the search was to look for Conn's identification. Under those circumstances the Court of Appeals rejected the State's argument that the search for identification could be justified as a search incident to arrest, stating:

"Conn was arrested for driving without a valid driver's license in his possession and for failing to provide proof of insurance. Both infractions involve the failure of the driver to produce documentation. The trooper did not need to search the vehicle to prove a negative, *i.e.*, that Conn did not, in fact, have a driver's license with him. We do not read K.S.A. 22-2501(c) as permitting a warrantless automobile search for the purpose of discovering a valid driver's license to *disprove* the crime for which the driver was arrested." Slip op. at 7.

We agree with this analysis. See *United States v. Santangelo,* 411 F. Supp. 1248 (S.D. N.Y. 1975); *People v. Harold Williams,* 63 Mich. App. 398, 234 N.W.2d 541 (1975); *State v. Webber,* 141 N.H. 817, 694 A.2d 970 (1997). We conclude that K.S.A. 22-2501(c) does not permit a warrantless automobile search for the purpose of discovering a valid driver's license or proof of insurance when the driver has been arrested for driving without a valid license or insurance.

In asking this court to reverse the Court of Appeals, the State argues the majority erred in its analysis of the State's argument that the seizure of the evidence was legitimate as a search incident to arrest for the offense of obstruction of official duty based upon Conn giving false information to the trooper. Because the trooper had probable cause to arrest Conn for obstruction before the search was conducted, the State argues the trooper had probable cause to search Conn's vehicle for evidence of that crime, even though he had not yet been arrested for that particular offense, only for driving without a valid license and without insurance.

The Court of Appeals majority rejected this argument that the search incident to arrest exception to the warrant requirement permits "an automobile search for evidence of any crime for which the law enforcement officer subsequently perceives he or she could

have arrested the driver." Slip op. at 6. The Court of Appeals also reasoned:

"Taking some liberty with traditional categorical syllogism form, the analysis may be deductively summarized as follows: K.S.A. 22-2501(c) was statutory authority for a warrantless search of Conn's automobile to discover evidence of the crimes for which Conn was arrested; Conn was not arrested for the crime of obstruction of official duty; therefore, K.S.A. 22-2501(c) was not statutory authority for a warrantless search of Conn's automobile to discover evidence of the crime of obstruction of official duty." Slip op. at 7.

In reaching this holding, the majority cited *Anderson,* 259 Kan. 16, as limiting the application of K.S.A. 22-2501(c) to situations where the arrest has been made.

In its petition for review, the State cites *State v. Barnes,* 220 Kan. 25, 551 P.2d 815 (1976), where this court held that officers who had probable cause to arrest a defendant for robbery could conduct a search incident to arrest before the actual arrest, if the events closely followed each other. The court cited K.S.A. 22-2501 as well as out-of-state authorities as support for the holding. 220 Kan. at 28-29.

The view in *Barnes* is consistent with the general principle that, for Fourth Amendment purposes, "[a] warrantless search preceding an arrest is a legitimate 'search incident to arrest' as long as (1) a legitimate basis for the arrest existed before the search, and (2) the arrest followed shortly after the search." *United States v. Anchondo,* 156 F.3d 1043 (10th Cir. 1998); see *Rawlings v. Kentucky,* 448 U.S. 98, 111, 65 L. Ed. 2d 633, 100 S. Ct. 2556 (1980) (stating that where the arrest was justified before the search and the arrest "followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa").

Conn, although not directly addressing the holding in *Barnes,* emphasizes the language of K.S.A. 22-2501 which applies "[w]hen a lawful arrest is effected." Conn argues that, although he was charged with obstruction, he was never arrested for obstruction. The State has not cited any portion of the record which establishes that Conn was arrested for obstruction. We find nothing in the evidence presented at the preliminary hearing, upon which the trial

court based its suppression decision, or at the trial which establishes that Conn was arrested for obstruction of legal duty. Our independent review of other portions of the record reveals that Conn was booked into jail on the offense of obstruction, but that occurred approximately 3 hours after the search. *Barnes* requires that the arrest follow shortly after the search, and that did not happen here. See *Barnes*, 220 Kan. at 29.

We agree with the Court of Appeals majority that, under the circumstances of this case, the search cannot be justified as a search incident to arrest.

## Probable Cause and Exigent Circumstances

The Court of Appeals analysis was singularly focused upon the oral findings of the trial court and interpreted those findings as being based upon a search incident to arrest. The Court of Appeals did not discuss the broader conclusion contained in the journal entry, a finding which does not include the words "search incident to arrest." This is understandable since Conn focuses his argument upon search incident to arrest and the State responds in kind. However, the written finding of the trial court and the State's arguments are sufficiently broad to enable unlimited review of this legal question: whether the search of the passenger compartment of an automobile the defendant had been driving was permissible as a warrantless search based on probable cause that the crime of obstruction of official duty had occurred and the existence of exigent circumstances.

The search of an automobile may be justified on the basis of probable cause that a crime has been committed even though it is not justified as a search incident to arrest. *State v. Tygart*, 215 Kan. 409, Syl. ¶ 3, 412-13, 524 P.2d 753 (1974). The *Tygart* court noted that the search incident to arrest statute, K.S.A. 22-2501, "refers only to a search incident to a lawful arrest. It does not refer to a search which is otherwise reasonable and lawful such as one based on probable cause." 215 Kan. at 412. Compare *Anderson*, 259 Kan. at 19, 24 (search of automobile not justified on any basis other than as a search incident to arrest).

In addition to the existence of probable cause there must also be exigent circumstances justifying an immediate search before a warrantless search can be conducted. A commonly applied exigent circumstance is the "automobile exception" which allows the warrantless search of a vehicle when probable cause has been established to justify a search. *State v. Boyd*, 275 Kan. 271, 273-74, 64 P.3d 419 (2003) (citing *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280 [1925]; *State v. Jaso*, 231 Kan. 614, Syl. ¶ 2, 648 P.2d 1 [1982]).

In an automobile search, the exigency arises because of the mobility of the vehicle. See *State v. Tucker*, 19 Kan. App. 2d 920, 923-24, 878 P.2d 855, *rev. denied* 255 Kan. 1007 (1994). In addition, it has been recognized that the exception "may also be justified because the expectation of privacy, with respect to one's automobile, is significantly less than the privacy expectation relating to one's home. [Citation omitted.] Automobile searches may be upheld if there is probable cause to believe there is evidence of crime in the automobile. [Citation omitted.]" *State ex rel. Love v. One 1967 Chevrolet*, 247 Kan. 469, 477, 799 P.2d 1043 (1990).

Trooper Phelps testified he had probable cause to believe Conn had committed the offense of obstruction of legal duty. At the time of the search, the officers knew that the defendant had falsely provided information regarding having a valid Texas driver's license in the name of Brian A. Trebbe. Although not clear from the Court of Appeals' statement of facts, Trooper Phelps testified he had not yet verified Conn's true identity when he asked Trooper Tucker to search the vehicle for Conn's identification. Under these circumstances, Conn's identification would constitute evidence of obstruction because it would provide proof that Conn had provided a false name or names. See *State v. Latimer*, 9 Kan. App. 2d 728, 733, 687 P.2d 648 (1984) (defendant's false identification of himself impeded the officer's investigation in violation of K.S.A. 21-3808).

Other jurisdictions have upheld a search for identification when there is probable cause to believe that the individual had obstructed legal duty by providing a false name even though the court would not allow a search based solely upon the failure of the in-

dividual to present identification when requested. For example, in *State v. Scheer*, 99 Or. App. 80, 83-84, 781 P.2d 859 (1989), the court rejected the State's argument that an officer may search for a driver's license where the officer only had probable cause to believe that the defendant had committed the crime of failure to display a driver's license. However, in *State v. Banks*, 103 Or. App. 312, 315, 797 P.2d 383 (1990), the court distinguished the situation in *Scheer* and held that where there is probable cause that the defendant has given a false name, the search could be conducted because evidence of identity was relevant to the offense of providing false information to a police officer. See *State v. Fesler*, 68 Or. App. 609, 685 P.2d 1014 (1984).

This distinction is valid. The discovery of identification was evidence that the name of Brian A. Trebbe was a false name and, therefore, was evidence of obstruction. Thus, under the circumstances of this case, the search was valid under the probable cause with exigent circumstances exception.

Because we find the search was valid as a search based upon probable cause with exigent circumstances we do not address the other exceptions considered and rejected by the Court of Appeals.

### *Did the Court of Appeals Err in Ruling That Evidence of Conn's Urinalysis Results Should Have Been Excluded?*

Trooper Phelps read Conn an implied consent advisory form and asked him to take a urine test. The advisory form stated that Conn's driver's license would be suspended if he refused to take the test. Conn agreed to take the test.

Conn filed a pretrial motion in limine to exclude the urinalysis results on the ground that the trooper was not authorized to request the test pursuant to K.S.A. 8-1001. The trial court ordered that the State refrain from mentioning the urinalysis until it introduced evidence that Conn had voluntarily consented to take the test. When the State called a forensic scientist to testify about the urinalysis results, Conn renewed his motion in limine and the trial court held a hearing outside the presence of the jury. The court allowed Conn to proffer testimony about the circumstances surrounding the urine test.

Conn testified that the trooper told him his driver's license would be suspended for 2 years if he refused to take the test. Conn stated, "I told him I didn't have anything to worry about taking a UA anyway because I wasn't under the influence, so I told him I didn't have a problem with it." Conn admitted that he freely and voluntarily consented to take the test. However, upon redirect, he clarified that he consented as a result of the threat of license suspension, stating, "I wouldn't have given [a sample] at that time if I didn't think I was going to lose my driving privileges."

The trial court ruled that the implied consent advisory contained in K.S.A. 8-1001 did not apply. However, the court also ruled that Conn's consent was freely and voluntarily given, despite his testimony to the contrary on redirect. The court allowed the scientist to testify that Conn's urine sample tested positive for methamphetamine.

K.S.A. 8-1001 provides in relevant part:

"(a) Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs. The testing deemed consented to herein shall include all quantitative and qualitative tests for alcohol and drugs. . . .

"(b) A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a) if the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both . . . ; and one of the following conditions exists: (1) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both . . . ; or (2) the person has been involved in a vehicle accident or collision resulting in property damage, personal injury or death."

The statute also requires that, before a test is administered, the person must be given notice of a list of matters commonly referred to as implied consent warnings. K.S.A. 8-1001(f).

The majority found that the implied consent warnings were not applicable to Conn because none of the prerequisites of K.S.A. 8-1001(b) were met. In other words, the troopers lacked reasonable grounds to believe that Conn was operating a vehicle under the influence of drugs or alcohol. The majority stated that "law en-

forcement candidly said that the urine sample was requested to aid in the drug possession investigation." Slip op. at 12. The dissent characterized the evidence differently, claiming that "[t]he troopers determined that the defendant seemed to be under the influence of alcohol or drugs." Slip op. at 20.

Neither version is an entirely accurate reflection of the record. When asked whether he believed alcohol or drugs were involved in the traffic stop, Trooper Phelps responded, "No, as far as at first look, no." Defense counsel then asked, "And the fact that you found what you suspected as narcotics, is that the reason for the urine test?" Trooper Phelps answered, "Well, we found drug paraphernalia in the vehicle with residue inside of the paraphernalia." Trooper Phelps had not detected any odor of marijuana.

One could infer from Trooper Phelps' testimony that his eventual discovery of drug paraphernalia in the vehicle gave him reason to believe that Conn had been driving under the influence of drugs. However, Conn was never charged with driving under the influence, despite testing positive for methamphetamine use. Also, no evidence was presented that the troopers believed Conn was driving erratically or exhibiting signs of being under the influence of drugs.

In any event, the State does not contest the majority's finding that the troopers lacked reasonable grounds to believe that Conn was under the influence of drugs or alcohol. Rather, the State contends that the dissent correctly found that Conn's consent was freely and voluntarily given; therefore, the evidence of his urine test was properly admitted.

The State contends that the Court of Appeals majority should have given deference to the trial court's factual finding that Conn freely and voluntarily consented to give a urine sample. The majority recognized that the appellate court is not to decide credibility issues, reweigh conflicting evidence, or redetermine questions of fact, citing *State v. Lewis*, 27 Kan. App. 2d 380, 387, 5 P.3d 531 (2000). However, the majority essentially found that Conn's consent was coerced as a matter of law because of the trooper's unauthorized threat of license suspension. Slip op. at 13.

The majority's reasoning finds some support in *State v. Brunner*, 211 Kan. 596, 507 P.2d 233 (1973), *disapproved in part on other grounds by State v. Murry*, 271 Kan. 223, 21 P.3d 528 (2001). In *Brunner*, the defendant was involved in a traffic accident and was taken to the hospital. An officer interviewed the defendant there and asked if he would submit to a blood alcohol test. When the defendant asked what would happen if he refused, the officer told him his driver's license would be suspended. The defendant then consented to the test.

This court held that, under an earlier version of K.S.A. 8-1001, because the defendant had not been arrested, his license could not be suspended for refusing a blood test. Despite the trial court's finding that the defendant's consent was voluntary, this court held:

"The result here is that Brunner's purported consent must be regarded as involuntary because coerced by the unfounded threat of suspension. The search (*i.e.*, the blood test) must therefore be tested constitutionally as a warrantless search of the person made without consent. Constitutionally it would be valid under [*Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966)] only if incidental to a valid arrest. Since there was no arrest at all, the search and its fruits must fall under the Fourth Amendment axe." 211 Kan. at 605.

While *Murry* overruled *Brunner* in part, it left undisturbed *Brunner's* holding that a defendant's consent to a blood test is not voluntary where it was coerced by the unfounded threat of license suspension. Based upon *Brunner*, the majority correctly concluded that Conn's consent was coerced as a matter of law where the trooper was not authorized to threaten that Conn's license would be suspended if he refused the test. The State does not offer an alternative basis as a justification for the testing. We, therefore, conclude the resulting search was constitutionally invalid.

However, even errors of constitutional magnitude may be held harmless if the appellate court can declare beyond a reasonable doubt that the error had little if any likelihood of having changed the result of the trial. *State v. Thompkins*, 271 Kan. 324, 335, 21 P.3d 997 (2001).

The most important and damning evidence in this case was the evidence seized during the stop of Conn's vehicle. However, evi-

dence of the urinalysis results was also important to demonstrate that Conn had knowledge of and intent to control the drugs and drug paraphernalia sufficient to establish possession. During closing argument, the State highlighted the fact that Conn's urine tested positive for methamphetamine and argued that this was evidence that Conn had possessed methamphetamine. Defense counsel countered that the jury could not find that the defendant possessed methamphetamine based solely upon the urine test because the jury had no way of knowing when or how the methamphetamine was ingested. Interestingly, defense counsel also argued the fact that Conn's urine did not test positive for marijuana created a reasonable doubt that Conn was in possession of the marijuana found in the vehicle. During rebuttal the State again mentioned the urinalysis evidence as showing that Conn was in possession of the drugs and drug paraphernalia in the car, even if he and the passenger shared joint possession.

In this case, where the passenger was the owner of the vehicle and she admitted to methamphetamine use, evidence that Conn had also used methamphetamine was an important part of the State's evidence that Conn was in possession of the drugs and drug paraphernalia found in the vehicle. Under these circumstances, it cannot be said beyond a reasonable doubt that the introduction of the urinalysis evidence had little if any likelihood of changing the result of the trial. The erroneous admission of the evidence therefore justifies reversal.

The decision of the Court of Appeals is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part, and the case is remanded for a new trial.

BEIER, J., not participating.

BRAZIL, S.J., assigned.

ALLEGRUCCI, J., concurring and dissenting: I agree with the majority that the Court of Appeals correctly held that the defendant's

consent to the urinalysis was coerced. I agree with the majority of the Court of Appeals that the evidence resulting from the search should have been suppressed. I therefore respectfully dissent from Syl. ¶ 3 and the corresponding portion of the opinion. I would affirm the Court of Appeals, reverse the district court, and remand for a new trial.