TYMKOVICH, CJ, concurring. I concur in the judgment denying Little-john’s habeas petition. I agree Littlejohn suffered no prejudice from his counsel’s failure to develop and present evidence on organic brain damage. And I agree the cumulative effect of the alleged errors did not prejudice Littlejohn. But I write separately to once again express my view from the first habeas appeal that scientific testimony about organic brain damage is not categorically more powerful than other types of mental-health evidence. I. The lynchpin of Littlejohn I was that “a more technical presentation of organic brain injury evidence is inherently more persuasive than a more holistic presentation of the kind offered by Dr. Draper.” Littlejohn v. Trammell (Littlejohn. I), 704 F.3d 817, 877 (10th Cir. 2013) (Tymkovieh, J., concurring in part and dissenting in part). The majority thus held Littlejohn’s counsel may have been constitutionally deficient because he failed to investigate whether organic brain damage caused Littlejohn’s behavioral issues—even though Dr. Draper, a psychologist with a doctorate in child development, testified that Littlejohn suffered from an emotional disturbance that reduced his ability to control himself and empathize with others. Id. at 867. I dissented, arguing the “central flaw in the majority’s analysis is its erection of a categorical invocation of ‘organic brain injury* evidence as different in kind for purposes of a Strickland analysis.” Id. at 878. After all, “some jurors may be swayed by testimony that sounds more technical and scientific; others may be confused or skeptical. It can be a mixed bag.” Id. I therefore believed the majority erred by “giv[ing] a talismanic quality to one type of mental health evidence without any showing that it [was] inherently more persuasive to juries than other evidence....” Id. And because “there are countless ways to provide effective assistance^]” I concluded counsel’s decision to have Dr. Draper testify rather than a psychiatrist like Dr. Saint Martin fell well within the “wide latitude counsel must have in making tactical decisions.” Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This was especially so because evidence of organic brain damage is a double-edged sword: it might have reduced the jury’s sense of Littlejohn’s moral culpability, but it might also have increased the jury’s concerns about Littlejohn’s future dangerousness. See Littlejohn I, 704 F.3d at 870 (Tymkovieh, J., concurring in part and dissenting in part). II. The district court’s findings on Dr. Saint Martin’s declaration support this view: Dr. Saint Martin’s scientific-based testimony was no more powerful or persuasive than Dr. Draper’s psychology-based testimony. This is not surprising given what Dr. Saint Martin said all along. As he stated in his initial declaration, Littlejohn suffered from “a behavioral disorder manifested by poor impulse control, psychological immaturity and judgment that is caused by neu-ro-developmental deficits experiences in his peri-natal development.” R., Vol. 1 at 171. At the evidentiary hearing, Dr. Saint Martin confirmed the declaration by explaining how dysfunction in Littlejohn’s frontal lobes caused his behavioral disorders—specifically, ADD and an impulse-control disorder. All Dr. Saint Martin added at the evidentiary hearing, then, was a formal ADD diagnosis. The fact the majority finds Dr. Saint Martin’s testimony less persuasive than his largely identical declaration thus demonstrates that Littlejohn I did not need to assume that evidence of organic brain damage is intrinsically more powerful than other types of mental-health evidence. To its credit, the majority adds two caveats to its broad Littlejohn I claim that evidence of organic mental deficits ranks among the “most powerful types” of mitigation evidence. Littlejohn I, 704 F.3d at 864. First, not all evidence of organic brain damage has the same potency. Maj. Op. at 559-60. Second, evidence of organic brain damage can sometimes have an aggravating, not mitigating, effect on the sentencing jury. Id. at 22-23, 130 S.Ct. 383. Yet the majority still asserts that evidence of organic brain damage is “as a categorical matter ... likely at the apex of its potency when a psychiatrist (or other qualified physician), like Dr. Saint Martin, provides it....” Maj. Op. at 570. These proceedings demonstrate that evidence of organic brain damage is not categorically more persuasive than other types of mental-health evidence. And mental-health evidence is not necessarily at “the apex of its potency” when presented by a physician rather than a psychologist. Maj. Op. at 571. Jurors are complex, unpredictable, and, above all, different. Some jurors may agree evidence a defendant suffers from organic brain damage is most persuasive when a physician presents it; others may be skeptical of science and persuaded by holistic and less scientific testimony. See Littlejohn I, 704 F.3d at 878 (Tymko-vich, J., concurring in part and dissenting in part). Just as “the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney,” Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008), so too is the strategic decision about which type of mitigation evidence will best resonate with a jury. Nothing has changed my view that at the penalty phase of a capital trial, a lawyer’s choice to present holistic, psychology-based testimony instead of scientific testimony on organic brain damage is a reasonable strategic choice. In fact, the last chapter of this case proves the point.