FILED
United States Court of Appeals
Tenth Circuit

**April 10, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

SCOTT WILLIAM WYBAN,

    Petitioner - Appellant,

v.

MOSES STANCIL, Director, CDOC;
BARRY GOODRICH, Warden; THE
ATTORNEY GENERAL OF THE STATE
OF COLORADO,

    Respondents - Appellees.

No. 26-1008
(D.C. No. 1:24-CV-01837-RMR)
(D. Colo.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **BACHARACH**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Scott William Wyban, a state prisoner proceeding pro se, [1] seeks a certificate of

appealability ("COA") to challenge the district court's denial of his petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. Exercising jurisdiction under 28 U.S.C.

§ 1291, we deny his request for a COA and dismiss this matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1] Because Mr. Wyban appears in these proceedings without counsel, "we liberally construe his filings, but we will not act as his advocate." _James v. Wadas_, 724 F.3d 1312, 1315 (10th Cir. 2013).

## I.   BACKGROUND

In 2016, the State of Colorado charged Mr. Wyban with three counts of sexual assault of a child by one in a position of trust (with two of these counts alleging that the abuse occurred as part of a pattern); one count of bribing a witness or victim; and one count of stalking. *See People v. Wyban*, No. 20CA1749, 2023 WL 12047253, at *1 (Colo. App. May 18, 2023) (unpublished). "The charges stemmed from allegations that [Mr.] Wyban sexually assaulted three sisters—his step-grandchildren—while they were placed in his and his wife's home between 2002 and 2004." *Id.*

The police first investigated the children's allegations of sexual abuse in 2006, when the children were respectively six, seven, and nine years old. However, the prosecutor's office did not bring charges until 2016, after a case worker raised concerns about Mr. Wyban's recent communications with one of the sisters and other people associated with her, such as staff members at the facility where she was staying.

The case went to trial in 2017, and all three sisters testified against Mr. Wyban, explaining what details they could remember of the sexual assaults. They acknowledged in their testimony "that their memories of the time when they lived with [Mr.] Wyban and the assaults were incomplete." *Id.* In his closing argument to the jury, Mr. Wyban's trial counsel contended that the prosecution had not proven guilt beyond a reasonable doubt based on "the sisters' young ages at the time of their alleged assaults, admittedly incomplete memories, inconsistencies in their stories, and law enforcement's decision to not bring charges when the sisters initially disclosed the assaults." *Id.*

2

The jury acquitted Mr. Wyban of the sexual assault charge related to the youngest sister but found him guilty of the other four charges. The trial court then "sentenced [Mr.] Wyban to a controlling indeterminate prison term of twelve years to life and twenty years of sex offender intensive supervision parole." *Id.*

Mr. Wyban thereafter filed a motion for postconviction relief under Colorado Rule of Criminal Procedure 35(c), arguing that he received ineffective assistance of counsel at trial. Among other arguments. Mr. Wyban claimed that trial counsel provided ineffective assistance by failing to "effectively cross-examine two of the sisters" or to present exculpatory evidence, such as defense witnesses who could testify "that [Mr. Wyban] has a good character and, as far as they knew, the sisters weren't sexually abused." *Id.* at *2, *4. As part of his argument that counsel failed to effectively cross-examine the sisters, Mr. Wyban argued that counsel should have asked them about their allegation in the 2006 investigation that Mr. Wyban had physically abused them, "which [Mr.] Wyban contended was false and would demonstrate the sisters' history of making false allegations." *Id.* at *3. "[Mr.] Wyban also contended that the cumulative effect of trial counsel's errors required reversal." *Id.* at *1.

The state trial court held a two-day evidentiary hearing on the Rule 35(c) motion, "at which trial counsel, [Mr.] Wyban, his wife, and his brother testified." *Id.* at *2. During the hearing, Mr. Wyban's trial counsel explained in detail "his examination strategy for the sisters," explaining, for instance, that he "opted to keep cross-examination of the sisters short to avoid rehashing graphic details of the alleged assaults and because he felt the sisters' direct testimony, which reflected that they were young at

the time of the alleged assaults and didn't have firm grasps on their memories, benefited [Mr.] Wyban." *Id.* at *3–4. Counsel specifically explained that he did not "bring up the sisters' allegations to police that [Mr.] Wyban physically abused them . . . because the allegations portrayed [Mr.] Wyban in a bad light and would open the door to further allegations for which [Mr.] Wyban wasn't charged." *Id.* at *3. Counsel likewise explained that he decided not to introduce the allegedly exculpatory evidence identified by Mr. Wyban because, among other considerations, he was "concern[ed] that it would open the door to more damaging information about [Mr.] Wyban and his wife." *Id.* at *5.

The state postconviction court found trial counsel's testimony to be credible. On Mr. Wyban's claim regarding cross-examination, the court "found that trial counsel made strategic decisions about how to cross-examine the sisters and that those decisions were within the wide range of professionally competent assistance." *Id.* at *4. As for Mr. Wyban's claim regarding the allegedly exculpatory evidence, the court found that trial counsel "knew about the witnesses and documents [identified by Mr. Wyban as exculpatory] prior to the trial" but made the strategic decision not to present this potential evidence based on his determination that, for each of the identified witnesses or documents, "the possible detriment of [the evidence] outweighed the possible benefit." ROA Vol. II at 806. The postconviction court found that this strategic decision was reasonable and professionally competent. The court considered and rejected Mr. Wyban's other Rule 35(c) claims for relief, then held that Mr. Wyban was not entitled to cumulative error review because no error had occurred. The court accordingly denied Mr. Wyban's Rule 35(c) motion. Mr. Wyban appealed to the state appellate court, which

4

affirmed the denial of the Rule 35(c) motion. *See Wyban*, 2023 WL 12047253, at *1. The

Colorado Supreme Court denied Mr. Wyban's subsequent petition for a writ of certiorari.

Mr. Wyban then filed a § 2254 habeas petition in the district court, again raising

claims of ineffective assistance of counsel. Based on its review of the record, the district

court held the state court's denial of postconviction relief was neither "based on an

unreasonable determination of the facts" nor "contrary to, or . . . an unreasonable

application of, clearly established [f]ederal law, as determined by the Supreme Court of

the United States." 28 U.S.C. § 2254(d). The district court therefore denied the § 2254

habeas petition. Mr. Wyban now seeks a certificate of appealability from this court to

appeal that decision. *See* 28 U.S.C. § 2253(c)(1)(A).

## II.    ANALYSIS

We may issue a COA only if the petitioner makes "a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing,

Mr. Wyban must demonstrate "that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the

issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v.

McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4

(1983)).

To succeed on a claim of ineffective assistance of counsel, a petitioner "must

demonstrate both that his counsel performed deficiently and that he suffered prejudice

from this deficient performance." *Wood v. Carpenter*, 907 F.3d 1279, 1290 (10th

Cir. 2018). "A court considering a claim of ineffective assistance must apply a 'strong

presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). The petitioner bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Surmounting *Strickland*'s high bar is never an easy task." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Moreover, when the state court adjudicated an ineffective assistance claim on the merits, we must apply an extra level of deference. *See id.* "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Thus, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* at 105 (quoting first *Strickland*, 466 U.S. at 689, and *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, (1997), then *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

In his combined opening brief and application for a COA, Mr. Wyban argues that trial counsel provided ineffective assistance by (1) "failing to impeach testimony describing physically impossible events"; (2) "failing to confront witnesses with materially contradictory prior statements"; (3) "failing to present evidence suggesting fabrication or improper influence"; and (4) failing to call witnesses in Mr. Wyban's

6

favor. Appellant's Br. at 4–5. He also argues that the state postconviction court unreasonably applied *Strickland* "by labeling multiple impeachment failures as 'strategy' without addressing cumulative prejudice." *Id.* at 6.

Mr. Wyban's first appellate argument focuses on his contention that trial counsel should have impeached the testimony from "witnesses" that sexual assaults occurred in an upstairs bedroom, which he argues was necessarily false because the Wybans lived in a single-story home. Appellant's Br. at 10. As an initial matter, we note that the trial testimony on this point was actually much more limited than Mr. Wyban's briefing suggests: the only witness who specifically mentioned an upstairs bedroom was the youngest sister, and the jury acquitted Mr. Wyban of the count involving her. Moreover, according to Mr. Wyban's own assertion, the sisters "had lived with the Wybans through-out their young lives in various locations including Casper, [Wyoming,] 1997–98, Idaho Falls, [Idaho,] 1999–2000, and San Jose, [California,] 2001–2002, prior to the foster placement." *Id.* Consistent with that assertion, trial counsel explained that he decided it would not be helpful to elicit testimony regarding the lack of stairs at the Wybans' Colorado residence because the sisters had "bounced around from so many houses." ROA Vol. II at 2990. Nothing in the record contradicts the state postconviction court's conclusion that this was a reasonable strategic decision for counsel to make, and reasonable jurists therefore would not debate the district court's dismissal of this habeas claim. *See Harrington*, 562 U.S. at 105; *Slack*, 529 U.S. at 484.

Mr. Wyban's second appellate argument seems to be premised largely on the oldest sister's trial testimony that Mr. Wyban committed an assault that involved oral sex,

7

which was inconsistent with statements she made to the detectives who interviewed her in 2006. The record shows, however, that trial counsel elicited from this victim the fact that she could not clearly remember the alleged incident of oral sex involving Mr. Wyban. Moreover, in his cross-examination of one of the detectives involved in the 2006 investigation, trial counsel elicited testimony that the oldest sister had not reported oral sex as part of Mr. Wyban's abuse but had alleged that another adult male family member abused her in this way. And in his closing argument to the jury, trial counsel highlighted the oldest sister's inconsistent allegations regarding oral sex as one of the key factors for the jury to consider. Thus, the record refutes Mr. Wyban's argument that counsel allowed this inconsistency to go unchallenged.

Moreover, to the extent Mr. Wyban is arguing that he received ineffective assistance on this matter because trial counsel "avoided aggressive impeachment," Appellant's Br. at 3, counsel explained at the evidentiary hearing that the oldest sister "was very meek on the stand" and that he thought it would be "self-defeating to just go after [her] aggressively," ROA Vol. II at 2949–50. Counsel explained that the theory of the defense was that "other people have abused this girl" and that she "wrongfully pointed the finger" at Mr. Wyban, which he did not think merited treating her with "our scorn and our aggression in return." *Id*. Although Mr. Wyban has indicated that he does indeed believe that the victim should have been treated with aggression, if not scorn, Mr. Wyban's postconviction disagreement with counsel's approach falls far short of establishing that counsel's reasoned decision not to aggressively cross-examine a

vulnerable young abuse victim constituted ineffective assistance of counsel under *Strickland*.

Mr. Wyban's third argument—regarding counsel's alleged failure to present evidence of fabrication—is equally unpersuasive. This argument is based primarily on Mr. Wyban's contention that trial counsel should have (1) introduced evidence that the sisters alleged in 2006 that Mr. Wyban beat them with a belt and struck or punched them in the face; (2) argued to the jury that these allegations were false because the only evidence of physical abuse documented in any police report was a small bruise on one child's face; and (3) argued that the jury should therefore conclude that all of the sisters' allegations were fabricated. However, trial counsel explained that he understood Mr. Wyban's position that the allegations of physical abuse were false but did not want to "open[] the door for the [prosecutor] to just bombard the jury with even more negative information," thus "burdening ourselves with even more allegations, and then having to rebut those as well." *Id.* at 2904. Again, we cannot say that the state court unreasonably applied *Strickland* by concluding that counsel's decision not to introduce this evidence was a reasonable strategic decision.

And the same holds true for all of Mr. Wyban's arguments regarding alleged fabrications of evidence. The record provides ample support for the state postconviction court's findings that trial counsel investigated these matters but made the reasonable strategic decision not to attempt to address them at trial based on the concern that doing so would cause additional negative allegations to come to light.

Mr. Wyban next argues that trial counsel provided ineffective assistance by failing to present witnesses in his favor, asserting that these witnesses would have testified that he "did not miss work between 8 am–5pm, M–F," and that "[o]ther adults (alibi witnesses) were present during relevant time periods." Appellant's Br. at 13. However, sexual assaults do not occur only between the hours of 8 a.m. and 5 p.m. on weekdays. Indeed, the oldest sister told the police in 2006 that Mr. Wyban usually assaulted the sisters while their grandmother was at the store, which would be entirely consistent with the assaults occurring on evenings or weekends. And trial counsel provided a thorough explanation as to why he did not call any of the potential witnesses identified by Mr. Wyban. He noted, for instance, that the proposed testimony from one of these witnesses would have refuted Mr. Wyban's argument that his wife was always present when he was with the girls. Moreover, trial counsel noted that there was no witness who could have accounted for Mr. Wyban's whereabouts at all times during the two years that the sisters were in the Wybans' home. The sisters did not allege that they were abused in front of other adults, but rather that the abuse happened when the other adults who lived in the home were absent, asleep, or drunk in another room. The potential witnesses identified by Mr. Wyban would not "necessarily refute" this testimony, and counsel concluded that any potential benefit of calling these witnesses was outweighed by the risks. ROA Vol. II at 2941.

Trial counsel further explained that he specifically did not call Mr. Wyban's wife as a witness because he was concerned that her testimony would "open the door to a lot of the . . . stuff that [counsel] was trying to keep out," such as "[t]he numerous allegations

that [the Wybans] were abusing the children and that [they] weren't fit parents." *Id.* at 2939. Calling Mr. Wyban's wife as a witness might also have opened the door for the prosecution to introduce evidence that one of her daughters had been sexually abused as a child for seven years by a different family member and that Mr. Wyban's wife still described her daughter's abuser as "a wonderful person" despite his conviction for the abuse. *Id.* at 2978.

As we have previously held, "the decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008). And nothing in the record calls into question the state postconviction court's conclusion that trial counsel made the professionally reasonable strategic decision not to call the potential witnesses identified by Mr. Wyban due to the risk that cross-examination would draw out other damaging information. *See id.*

In addition to the specific arguments for habeas relief that he identifies as issues for appeal, Mr. Wyban's appellate briefing alludes to several other possible claims of ineffective assistance, all generally relating to trial counsel's decisions regarding the evidence presented at trial. Assuming without deciding that Mr. Wyban adequately preserved these arguments, we see no basis for granting him a COA on any of these other potential issues either. Nothing in the record supports Mr. Wyban's argument that the state postconviction court's denial of his ineffective-assistance claims was based on an unreasonable determination of the facts or an unreasonable application of *Strickland* to those facts. *See* 28 U.S.C. § 2254(d). To the contrary, the record reflects that trial counsel thoughtfully considered the government's evidence against Mr. Wyban, evaluated the

11

risks and benefits of different cross-examination tactics, and weighed the risks and potential benefits of introducing various witnesses and documents that Mr. Wyban believed would be helpful for his case. And these decisions were "quintessentially a matter of strategy for the trial attorney." *Boyle*, 544 F.3d at 1139.

Lastly, because there was "no error in the performance of [Mr. Wyban's] trial counsel," there was "no occasion to apply the cumulative-error doctrine in this case." *United States v. Rivera*, 900 F.2d 1462, 1465 (10th Cir. 1990) (en banc). Mr. Wyban's arguments regarding cumulative error are therefore unavailing.

### III.   CONCLUSION

Reasonable jurists would not debate the district court's denial of Mr. Wyban's habeas petition. We therefore DENY his request for a COA and DISMISS this matter.

Entered for the Court

Carolyn B. McHugh
Circuit Judge